CONSTANTINE A. DESPOTAKIS, ESQ. (CD 4944)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York 10604
Tel.: (914) 323-7000
Attorneys for Defendant, Bank of America, N.A.

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
PL SHIPPING & LOGISTICS LTD.,

              Plaintiff,

-against-

H.J.M. INTERNATIONAL INC. and BANK OF
AMERICA and AFFORDABLE LUXURY
RYAN KENNY and RYAN GLOVER and
RONALD PLATOVSKY and ABN AMRO
BANK,

              Defendants.
-------------------------------------------------------------------x

07 CV 2818 (SHS)

AFFIDAVIT IN SUPPORT OF
MOTION FOR
SUMMARY JUDGMENT

COMMONWEALTH OF PENNSYLVANIA)
                                     ) ss.
COUNTY OF LACKAWANNA        )

THEODORE GEORGIADES, being duly sworn, deposes and says:

1. I am a Vice-President and Senior Operations Manager in the Trade Services Department of defendant, Bank of America, N.A. (sued herein under its common trade name of "Bank of America"), hereinafter referred to as "BOA". The Trade Services Department is a centralized operation headquartered in Scranton, Pennsylvania and its responsibilities include, without limitation, receiving, processing and appropriately acting upon, as the circumstances may warrant, various types of commercial transaction documents presented to BOA. Such

1614959.1

documents include, without limitation, documentary collections (such as is the case herein), letters of credit (including both standby and import/export letters of credit), trade acceptances and bankers acceptances.

2. I am familiar with the facts and circumstances of this matter based upon (i) the books and records of BOA kept during the normal and ordinary course of its business, (ii) the pleadings in this matter, and (iii) the provisions of the governing industry Uniform Rules for Collections as promulgated by the International Chamber of Commerce, and embodied in Publication No. 522, Leaflet Version ICC No. 522 LF, hereinafter referred to as "URC 522", a copy of which is attached hereto for the Court's easy reference as Exhibit A, and (iv) my long experience and familiarity with the standard and usual industry procedures and practices in respect of the types of commercial transactions noted in paragraph 1 above, and including not only my thirteen (13) years with BOA and its predecessor banks, Fleet and NatWest, but also based upon my membership in, and Chairmanship of, the International Financial Services Association National Collection Committee. Accordingly, I respectfully submit this Affidavit in support of BOA's within motion for summary judgment to dismiss both plaintiff's action and the crossclaims asserted against BOA by defendant H.J.M. International, Inc. (hereinafter "HJM"). In addition, the Court's attention is respectfully referred to the accompanying affidavit of BOA's counsel herein, Constantine A. Despotakis.

3. In paragraph 13 of the initial complaint filed in this action by plaintiff, it alleges that it was the *"shipper, consignee and/or owner ..."* of certain polo shirts and that it was purporting to bring this action *"... on its own behalf and as agent or trustee on behalf of and for the interest of all parties who may be or become interested in the said polo shirts, as their respective interest may ultimately appear, and plaintiff PL Shipping is entitled to maintain this action"*. Plaintiff further asserted damages calculated at $44,157.92 and attached to its initial

1614959.1

complaint copies of two alleged separate purported shipping documents, as to which plaintiff, bearing an address in India, appears as "shipper" only as to one. The other designated shipper was an entity which appears to be "Ahill Knit Wears", likewise with an address in India. In addition, as to the one shipping document reflecting plaintiff, the designated consignee is HJM, with an address in Jamaica, New York, while on the shipping document relevant to Ahill Knit Wears, the consignee is designated as BOA's branch located in Atlanta, Georgia. Subsequently, plaintiff filed an amended complaint repeating the identical allegations in respect of the above, which plaintiff designated as "First Count", but then also adding a "Second Count" to assert an additional cause of action regarding a purported second documentary collection totaling $14,754.75. In support of the newly added second count, plaintiff attached various purported shipping documents, all of which list the shipper/exporter/manufacturer to be Rajpriya Exports, in India, with the sole exception of an Emirates Airway bill listing plaintiff simply as the "shipper". On that particular document, BOA is not designated as consignee or otherwise. As to the remaining documents relating to Rajpriya Exports, BOA appears as a consignee only on one while the designated consignee on all of the other documents is defendant Ryan Kenny. Finally, on or about August 2, 2007, plaintiff filed a second amended complaint bringing in as added defendants not only Ryan Glover and Ronald Platovsky, the alleged principals of defendant Affordable Luxury Ryan Kenny, but also ABN Amro Bank. Copies of plaintiff's initial and amended complaints are attached hereto as collective Exhibit B. Copies of the various answers and crossclaim answers filed by BOA and defendant H.J.M. International Inc. are attached hereto as collective Exhibit C.

4.      It is plaintiff's position in this matter that the subject documents, to the extent such were attached to its complaints were packaged and transmitted to BOA in a designated documentary collection package presentation. In order to explain the process to this Court for

1614959.1

the sake of clarity, a documentary collection is created when a seller of merchandise (in this case the seller is clearly Ahill Knit Wears in India) presents the various completed shipping documents regarding the goods to its local bank with a request that its bank process and present (deliver) the documents as per the required industry practice, rules and regulations to the purchaser's designated bank with certain designated instructions as prepared by the seller's bank to the receiving bank. Pursuant to the URC, the seller's bank is designated as the "remitting bank" (URC 3a2.) and the purchaser's bank is designated as the "collecting bank" (URC 3a3.). In the case herein, ABN Amro (hereinafter referred to as "ABN") is the remitting bank, while BOA is the collecting bank. As noted, it is the remitting bank that then prepares its collection instructions, terms and conditions as to what action, if any, the collecting bank is to undertake upon receipt of the documentary collection. This is what constitutes the documentary collection and, pursuant to the URC, there are many types of possible instructions that could be set forth by the remitting bank. The possibilities range from instructions for the collecting bank to release the documents to the purchaser only upon receipt of payment to be then transmitted by the collecting bank to the remitting bank, to simply releasing the documents without payment, such as to release the documents against "acceptance" only. As the Court can see, URC Article 4 sets forth a lengthy, clear and detailed set of requirements as to the contents required in a documentary collection prepared by a remitting bank. Included in the many requirements are those set forth in URC 4b7.a which mandates the remitting bank to set forth the "*Terms and conditions upon which payment and or acceptance is to be obtained*" and in *URC 4b7.b* which separately requires the remitting bank to set forth the "*Terms of delivery of documents against 1) payment and/or acceptance 2) other terms and conditions.*" Moreover, URC Article 5 is equally precise as to the steps and documents to be used in making presentation of the documentary collection to the collecting bank.

1614959.1

5. As to the purported documentary collection in question asserted in plaintiff's First Cause of Action, BOA had transmitted various requests to ABN in India to provide BOA with copies of the purported documentary collection. Attached hereto as collective <u>Exhibit D</u> are copies of those various transmissions to ABN. Finally, in July, 2007, ABN responded and on July 27, 2007 I sent that response to BOA's attorney herein, Mr. Despotakis. Copies of ABN's responsive documents, consisting of (i) its collection instructions, (ii) Bill of Exchange (the promissory note/draft), (iii) two Commercial Invoices and (iv) two Pan Global Lines/PL Shipping & Logistics Ltd. Multimodal Transport Documents (the bills of lading --- which also clearly reflect plaintiff as a <u>transporter</u> of the goods, and <u>not</u> the owner/seller of the goods, which is Ahill Knit Wears) are attached hereto as collective <u>Exhibit E</u>. These documents present some critical facts (the Court should also note that the dates set forth on the various documents are in the customary fashion used in India and other countries --- the month is listed first, followed by the day and then the year). First, plaintiff is not the seller/owner of the subject goods. Second, ABN's covering collection instructions specifically make the presentation subject to all of the provisions of URC-522. Third, ABN's collection instructions clearly state that the presentation is against <u>acceptance</u> only and not for BOA to secure payment prior to release of the documents. Fourth, the documents attached by plaintiff to its initial complaint in this action are plain wrong --- a confusion created perhaps by the fact that it is not the seller/owner of the merchandise.

6. Based upon all of the foregoing upon which plaintiff's First Cause of Action is based, BOA respectfully submits to this Court that plaintiff (i) has no legal standing or right to maintain this action, and (ii) in any event BOA has no liability to any party in this matter since the documentary collection instructions were against acceptance only. Affiant will now elaborate.

7.      As to the issue of standing, the URC specifically establishes the sole legal/contractual relationship only between the remitting bank (ABN herein) and the collecting bank (BOA herein). See URC Articles 1, 2, 3, 4, 5, 10 and 11, for example. Indeed a plain reading of all the provisions of the URC makes it clear that when a documentary collection is received from a remitting bank, the only legal relationship established is solely between that remitting bank and the collecting bank pursuant to the URC. Such is also the governing industry practice for such situations on documentary collections. Indeed, even in the case where a documentary collection is against actual payment (as opposed to acceptance which is the case herein) such payment is even restricted to be <u>only</u> to the remitting bank by the collecting bank. See URC 16b. This requirement is perfectly logical and consistent with the URC, and especially URC Articles 5 and 6, which speak in terms of an interbank processing and presentation of a documentary collection and which also require the remitting bank to set forth its instructions.

8.      As to the fact that the presentation from ABN to BOA of the documentary collection package (collective <u>Exhibit E</u>) was <u>only against acceptance</u>, the significance of that instruction, especially when coupled with another fact about which plaintiff obviously had no knowledge as evidenced from its pleadings, supports BOA position herein for a dismissal of the complaint and all H.J.M. crossclaims. As the Court will note, the documentary collection included a 45 day sight draft –the Bill of Exchange. This means that Ahill Knit Wears, as the seller of the goods, had agreed with Affordable Luxury Ryan Kenny, as the purchaser of the goods, that no immediate payment was required, but that Affordable Luxury Ryan Kenny had purchased the goods on "time". Affordable Luxury Ryan Kenny was to make direct payment on the draft to Ahill Knit Wears 45 days after its "acceptance" of the Bill of Exchange by Affordable Luxury Ryan Kenny. The sole purpose of BOA being required to secure the written acceptance of Affordable Luxury Ryan Kenny of the Bill of Exchange (URC Article 7b), was to

1614959.1

serve as an acknowledgement of the indebtedness of Affordable Luxury Ryan Kenny to the seller, Ahill Knit Wears under that draft so that Ahill Knit Wears could enforce its rights in the event of non-payment by Affordable Luxury Ryan Kenny. BOA had received a prior message from ABN inquiring as to the status of payment on the subject documentary collection it had presented to BOA (attached hereto as collective Exhibit F). Clearly, ABN confirms in that message that the seller had on May 24, 2006 indeed received partial payment of $10,325.50 against the $44,157.90 obligation under the sight draft, leaving a balance of $33,832.40. Obviously, as a matter of documented fact, this part payment evidences Affordable Luxury Ryan Kenny's acceptance of its obligations under the 45-day sight draft. Moreover, the seller's rights against Affordable Luxury Ryan Kenny are certainly intact if it wishes to pursue full payment of the remaining balance here in the United States (presuming Affordable Luxury Ryan Kenny does not have defenses based upon the condition or conformity of the goods). In short, the fact that BOA did not apparently secure the formal "acceptance" of the draft (in this case, this would have been done by having the purchaser sign the face of the draft) from Affordable Luxury Ryan Kenny, as purchaser, prior to the release of the documents is not the cause of any loss by the seller. Moreover, no prejudice has resulted in the seller's rights to seek recovery from Affordable Luxury Ryan Kenny either on the draft (especially since it made partial payment) or, of equal importance, outside of the draft on, as I am advised by BOA's counsel herein, any number of legal and equitable grounds since Affordable Luxury Ryan Kenny actually received the goods (subject to any defenses as to quality, conformity, etc...).

9.  For the same reasons of standing and the above stated reasons that the collection was only against acceptance, HJM's crossclaims against BOA must likewise be dismissed. HJM was also not the remitting bank and was the local freight forwarder here in New York who released the merchandise to the purchaser upon presentation of the shipping documents that

allowed the purchaser to obtain such possession. In light of the plaintiff's lack of standing and the acceptance character of the documentary collection, HJM's crossclaims must also be dismissed.

10. Finally, and unlike the above documents provided by ABN on plaintiff's First Cause of Action, BOA has absolutely no information or documents as to the plaintiff's Second Cause of Action. Obviously, the issue of plaintiff's lack of standing is the same. Moreover, and as the Court can appreciate from the above discussion, the need for BOA to have copies of the purported collection instructions would be for BOA to (i) review the actual documents allegedly submitted and (ii) review and verify the terms of the alleged URC instructions provided by the remitting bank. To date, BOA has not, to the best of my knowledge, information and belief, received any communication, tracer, demand or follow-up request from any bank purporting to be the remitting bank on any documentary collection matching the Second Cause of Action. Consequently, and as I am advised by BOA's counsel herein, plaintiff's action additionally falls based upon the lack of *prima facie* documentary evidence to initially indicate that BOA was even the collecting bank and, if so, what BOA's purported obligations were under the terms of the documentary collection. Accordingly, as to the Second Cause of Action, BOA does not even know whether it ever did receive documents from any remitting bank, much less with which bank it should communicate in order to request copies of the documentary collection instructions as to that transaction.

11. Finally, a clarifying note for the Court. BOA had none of the alleged documentary collection package and instructions and/or documents purportedly delivered to it in respect of the purported documentary collections recited in the First Cause of Action. Based upon my inquiries of the Atlanta branch of BOA, I was able to tentatively ascertain that some package was delivered to that branch as to the First Cause of Action and that the branch did


release the package to the purchaser. The branch did not make any copies, and so it was not until BOA's receipt of copies of the documents from ABN in July, 2007 that the nature of the transaction could be determined. As to the documentary collection package asserted in the plaintiff's Second Cause of Action, BOA has no documents whatsoever to date, as noted above. Moreover, I was unable to ascertain any information whatsoever that any such package was ever in fact received by BOA

WHEREFORE, it is respectfully requested that BOA's within motion for summary judgment be granted in full dismissing plaintiff's complaint and HJM's crossclaims against BOA in their entirety, together with such other and further relief as to this Court may seem just and proper under the circumstances.

_____
THEODORE GEORGIADES

Sworn to before me this
14th day of August, 2007

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael E. Evans, Notary Public
Laflin Boro, Luzerne County
My Commission Expires Aug. 31, 2010

Member, Pennsylvania Association of Notaries

1614959.1